UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICK E. SKINNER,

                        Plaintiff,                    6:07-CV-0310
v.                                                    (GTS/GHL)

CITY OF AMSTERDAM,

                        Defendant,
_____

APPEARANCES:                                 OF COUNSEL:

RICK E. SKINNER
   Plaintiff, *Pro Se*
67 Glen Avenue
Amsterdam, NY 12010

LEMIRE JOHNSON, LLC                          GREGG T. JOHNSON, ESQ.
   Counsel for Defendant
P.O. Box 2485
2534 Route 9
Malta, NY 12020

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court in this employment discrimination action filed *pro se* by Rick

E. Skinner ("Plaintiff") is a motion for summary judgment filed by the City of Amsterdam

("Defendant").  (Dkt. No. 35.)  For the reasons set forth below, Defendant's motion is granted,

and Plaintiff's Complaint is dismissed in its entirety.

I.      **RELEVANT BACKGROUND**

A.      **Plaintiff's Claims in his Complaint**

Generally, liberally construed, Plaintiff's Complaint alleges that Defendant, his former employer, violated the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq*. ("ADA") by, *inter alia*, (1) permitting him to be subject to a hostile work environment, (2) retaliating against him for filing a complaint with the United States Department of Transportation Federal Motor Carrier (hereinafter "DOT") in November 2004, (3) subjecting him to adverse employment action, (4) subjecting him to drug tests, and (5) improperly disclosing confidential information. (Dkt. No. 1.)  Familiarity with the factual allegations supporting these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties.  (*Id*.)

B.      **Undisputed Material Facts**

The following are undisputed statements of material fact.  (Dkt. No. 35, Attach. 2 [Defs.' Rule 7.1 Statement].)[1]

Plaintiff was employed by the Defendant City of Amsterdam from 1987 until 2005.  In 1990, Plaintiff hurt his back and was prescribed "pain killers."  After years of taking pain killers, Plaintiff became addicted to them.  In 2000, Plaintiff became Foreman in the Water Department

---

[1]      The Court notes that Plaintiff failed to submit a Rule 7.1 Response despite having been adequately advised of the consequences of failing to do so.  (*Compare* Dkt. No. 35, Part 27 [attaching Affidavit of Service swearing that Plaintiff was served with "Notice of Consequences for Failure to Response to Summary Judgment Motion"] *with* Dkt. No. 37 [Plaintiff's Response Papers].)  Presumably, Plaintiff understood these consequences, because he requested (and was granted) an extension of the response-filing deadline.  (Dkt. No. 36.)  Despite Plaintiff's failure, the Court has carefully reviewed the record citations offered in support Defendant's statement of material facts in order to ensure that Defendant's factual assertions are indeed supported by the record.

of the Department of Public Works of the City of Amsterdam.  As a Foreman, or Crew Chief,

Plaintiff's job duties included, but were not limited to, the oversight of a crew of four to five

individuals, operating City-owned vehicles, operating construction and/or demolition equipment,

overseeing safety measures utilized by the crew, and investigating reported water problems.

In or about 2001, Plaintiff had his personal snow blower repaired and had those repairs

billed to Defendant's account rather than pay for such repairs from his personal funds.  As a

result of Plaintiff's attempt to repair his personal machinery at Defendant's expense, Plaintiff's

job description was changed by his then-Supervisor, Michael Palmer.  More specifically,

Plaintiff was no longer responsible for scheduling or ordering materials.

In 2003, while addicted to "pain killers," Plaintiff started doing illegal drugs such as

cocaine and heroin.  In August 2003, Plaintiff entered Conifer Park Rehabilitation Center.  After

undergoing two weeks of treatment, Plaintiff left the Rehabilitation Center.

In November 2003, Plaintiff sold scrap metal materials, which were the property of

Defendant, and converted the proceeds to his own personal use.  Around this same time period,

Plaintiff's City-issued DPW truck was observed at his home during work hours.

On April 19, 2004, Plaintiff submitted to a drug and alcohol urinalysis test administered

by the City as part of its ongoing efforts to comply with the Omnibus Transportation Employee

Testing Act of 1991.  In May 2004, then-Mayor Joseph Emanuele was informed that Plaintiff

failed a drug test on April 19, 2004.[2]

---

[2]        It would later be discovered that Plaintiff was actively using illegal drugs,
including cocaine and prescription drugs that he did not have a prescription for, in April 2004.
Plaintiff testified that pain killers were his "drug of choice," but that, on occasion when he had
difficulty obtaining them, he sniffed heroin and, on one occasion, attempted to "shoot" heroin.

Prior to failing the April 2004 drug test, Plaintiff kept his drug use a secret from his Supervisors, discussing his drug use only with certain co-workers, with/from whom Plaintiff alleges he used and/or purchased drugs.  Before failing this drug test, Plaintiff had previously taken, and passed, at least six to ten drug and alcohol tests.

As a result of Plaintiff's failure of the drug and alcohol urinalysis in April 2004, Plaintiff was served with a Notice of Discipline and suspended from his position with the City for six months without pay.[3]  As a condition to Plaintiff's return to work after his six month suspension, he was required to submit to at least six random alcohol and illegal drug tests within the first twelve months following his return to duty.  As a further condition to Plaintiff's return to work, he was required to seek, and complete, professional counseling for his drug use.[4]

In November 2004, at or around the time that Plaintiff returned to work, he reported to Mayor Emanuele and Attorney Going that he had entered and completed a rehabilitation program through McPike Addiction Treatment Center in June 2004.[5]  Several weeks subsequent to Plaintiff's return to work, Mike Palmer, the City Engineer, received complaints from Plaintiff's crew that he was leaving job sites without advising his crew, leaving job sites with needed tools in the City truck, and failing to keep them informed of his whereabouts.  Palmer also received complaints that Plaintiff's crew was unable to communicate with him when he was off a job site.

---

[3]     Defendant City of Amsterdam's Employee Manual contains a policy stating that all employees are to be free from the influence of drugs and/or alcohol during working hours and "*. . . failure to adhere to such policy may result in immediate discharge*."

[4]     Plaintiff did not grieve the conditions of his suspension or his return to work through his union.

[5]     Plaintiff tested positive for opiates upon his entrance into the McPike program in May 2004, and was actively using controlled substances that he obtained from sources other than by prescription in June 2004.

On or about December 4, 2004, Plaintiff was informed that he was no longer allowed to be alone during work hours.  On December 6, 2004, Plaintiff was involved in a minor car accident.  Although two other City drivers were also involved in accidents on that same day, only Plaintiff was required to submit to a drug test.  On or about December 7, 2004, Plaintiff informed Ray Halgas, the general foreman, that certain co-workers were harassing him about his drug problem, and that they had "taped pills to his time card and left a fake 'joint' on his desk." However, Plaintiff never advised Ray Halgas that he was disabled, or suffering from a disability.

In addition, despite orally submitting his complaints to Mr. Halgas, Plaintiff never submitted any written complaints of unlawful harassment to Attorney Going, Mayor Emanuele, or the City's Director of Employee Relations.[6]  As a result, neither Attorney Going nor Mayor Emanuele were aware of any alleged unlawful disability-based harassment of Plaintiff until Plaintiff filed his Verified Complaint with the DHR in May 2005.[7]

In February 2005, Plaintiff was issued a Disciplinary Oral Warning as a result of being observed leaving a job site without permission.[8]  On April 21, 2005, as part of his conditional return to work, Plaintiff was required by the City to submit to an alcohol and illegal drug test. Plaintiff refused to submit to the drug test.  Plaintiff was advised by then-Corporation Counsel Going, his Supervisor and his union representatives that his refusal to submit to this drug test would violate his conditional "return to work" and result in his immediate termination.  Despite being provided with this information, Plaintiff still refused to submit to the test.  As a result,

---

[6]     The Employee Manual promulgated by Defendant, dated March 5, 2002, contains an anti-harassment policy and method by which employees can report incidents of unlawful harassment.

[7]     Plaintiff also never advised any Supervisor, the Mayor or Attorney Going that he was disabled or suffered from any disability.

[8]     Plaintiff had previously been counseled for similar conduct.

Plaintiff was terminated from his employment with Defendant.[9]

On or around April 26, 2005, Plaintiff was served with a Notice of Discipline (dated April 26, 2005), which advised him that he was being terminated due to misconduct.  On this same date, Plaintiff, through his union, filed a formal grievance claiming that his April 2005 termination violated his Collective Bargaining Agreement.

On April 28, 2005 Plaintiff's grievance was denied.  Following this denial, Plaintiff submitted his grievance to arbitration through the New York State Public Employees Relations Board ("PERB").  In May 2005, while awaiting his arbitration hearing, Plaintiff filed a Verified Complaint with the New York State Division of Human Rights, and dual filing with the U.S. Equal Employment Opportunity Commission, advancing the same allegations and claims as those contained in his Complaint in this action.

In July 2005, the New York State Department of Labor disqualified Plaintiff from receiving unemployment benefits after determining that his employment had been terminated due to misconduct.  As of July 8, 2005, Plaintiff was using pain medications, including Vicodin, which he purchased from a source other than a pharmacist, as well as heroin and crack cocaine.

On September 29, 2005, Plaintiff's arbitration hearing was held.  At the arbitration hearing, Plaintiff was represented by attorney Kenneth J. Larkin, Union Representative of Council 66, AFSCME.  On October 5, 2005, after a full hearing before an impartial Arbitrator where both sides were permitted to present evidence and testimony, the Arbitrator found Plaintiff guilty of the disciplinary charges of misconduct leveled against him and upheld the legitimacy of Defendant's termination of Plaintiff's employment.  Plaintiff did not appeal the Arbitrator's Decision.

---

[9]      Plaintiff later testified that he used Lortab on at least one occasion between November 2005 and April 21, 2005.

In November 2006, the DHR issued a determination of "no probable cause" subsequent to its investigation into the allegations of Plaintiff's Verified Complaint.  In December 2006, the EEOC adopted the findings of the DHR dismissing Plaintiff's Complaint and issued a "right to sue" letter.

After his termination, Plaintiff continued to use drugs.  However, throughout his employment with Defendant, Plaintiff was able to successfully perform his job without drugs impacting upon his work.  Moreover, Plaintiff's drug use did not cause him to miss work.

### C.      Defendant's Motion for Summary Judgment

Generally, in support of its motion for summary judgment, Defendant argues as follows: (1) Plaintiff's claims are barred, in whole or in part, by the doctrine of collateral estoppel; (2) Plaintiff was not "disabled" prior to his termination, as that term is defined under the ADA, because he continued to use/abuse drugs while employed by Defendant; (3) the harassment alleged by Plaintiff was not trait-based or sufficiently severe to alter any term, condition, or privilege of his employment; (4) requiring Plaintiff to submit proof of successful completion of a treatment program, and proof of continued sobriety, does not violate the ADA; and (5) modest changes to Plaintiff's job duties after his return to work from rehabilitation do not violate the ADA.  (*See generally* Dkt. No. 35, Attach. 1 [Def.'s Memo. of Law].)

In Plaintiff's response to Defendant's motion for summary judgment, he argues as follows: (1) as a person addicted to drugs, he was a disabled person during his employment with Defendant; and (2) he was subjected to harassment, and ultimately terminated as a result of his disability.  (*See generally* Dkt. No. 37 [Plf.'s Response Memo. of Law].)

In its reply, Defendant argues as follows: (1) as a result of Plaintiff's failure to comply with the procedural requirements set forth in the Local Rules of Practice for this Court, Plaintiff has conceded facts that make summary judgment appropriate as a matter of law; (2) Plaintiff has "consented" to the entry of summary judgment as a result of his failure to address Defendant's argument regarding timeliness, and under the doctrine of collateral estoppel; and (3) Defendant's substantive arguments warrant the entry of summary judgment.  (*See generally* Dkt. No. 47, Attach. 3 [Def.'s Reply Memo. of Law].)[10]

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial."  Fed. R. Civ. P. 56(e)(2).

---

[10]     Defendant also argues that the Court should strike the affidavit of non-party witness William Wills.  (Dkt. No. 47, Attach. 3.)

As for the *materiality* requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 [citation omitted].

As for the *genuineness* requirement, a dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Id.* As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a *genuine* issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted; emphasis added]; *see also* Fed. R. Civ. P. 56(e)(2).[11] Similarly, inadmissible hearsay is insufficient to create a *genuine* issue of fact, "absent a showing that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) [citations omitted]. Moreover, "an affidavit . . . that, by omission or addition, contradicts the affiant's previous deposition testimony" is insufficient to create a *genuine* issue of fact. *Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) [citations omitted].

**B.    Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Fed. R. Civ. P. 56 is based entirely on the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Wade v. Tiffin Motorhomes, Inc.*, 05-CV-1458, 2009 WL 3629674, at *3 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.). In such

---

[11]    As the Supreme Court has explained, "[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986) [citations omitted].

cases, a trial judge deciding a motion for summary judgment may, where appropriate, dismiss for

failure to state a claim.  *Wade*, 2009 WL 3629674, at *3 (citations omitted).  For the sake of

brevity, the Court will not recite, in this Decision and Order, the well-known legal standard

governing dismissals for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), but will

direct the reader to the Court's recent decision in *Wade*, 2009 WL 3629674, at *3-5.

### C.    Legal Standards Governing Plaintiff's Claims

#### 1.    Hostile Work Environment Claim Under the ADA

"The Second Circuit has not directly addressed whether the ADA gives rise to a cause of

action for hostile work environment."  *Edwards v. Brookhaven Sci. Assoc., LLC*, 390 F. Supp.2d

225, 230 (E.D.N.Y. 2005) (citing *Bonura v. Sears Roebuck & Co.*, 62 F. App'x. 399, 400 n.3 [2d

Cir. 2003]).  "However, several other circuit and district courts have recognized such claims."

*Edwards*, 390 F. Supp.2d at 230 (collecting cases).

"Regardless of whether the ADA does allow for a hostile work environment claim, a

plaintiff suing for disability discrimination must establish a prima facie case of discrimination

under the ADA."  *Id*. (citations omitted).

> In order to establish a prima facie case of discriminatory discharge, a plaintiff
> must show that: (1) the employer is subject to the ADA; (2) he suffers from a
> disability within the meaning of the ADA; (3) he could perform the essential
> functions of his job with or without reasonable accommodation; and (4) he
> suffered an adverse employment action because of the disability.

*Id*. (citing *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869 [2d Cir. 1998]); *see also Fox v.

GMC*, 247 F.3d 169, 176 (4th Cir. 2001) (incorporating the elements of a prima facie case of

discrimination under the ADA into the elements necessary to establish an ADA-based hostile

work environment claim).

Under the ADA, "disability" is defined as follows: (A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.  42 U.S.C. § 12102(2).

Therefore, "[a] person can demonstrate that []he has a disability within the meaning of the ADA in any of three ways."  *Ragusa v. Malverne Union Free Sch. Dist.*, 582 F. Supp.2d 326, 340 (E.D.N.Y. 2008).  "[H]e can show that []he (1) has a physical or mental impairment that 'substantially limits' one or more 'major life activities'; (2) has a 'record of such impairment'; or (3) is 'regarded as' having such an impairment."  *Ragusa*, 582 F. Supp.2d at 340 (citing 42 U.S.C. § 12102[2]).  "Disability determinations are made on a case by case basis."  *Id.* (citing *Reeves v. Johnson Controls World Servs. Inc.*, 140 F.3d 144, 151-52 [2d Cir. 1998]).

> a.   **Suffers from a Disability Within the Meaning of the ADA**
>
> i.   **Physical or Mental Impairment that "Substantially Limits" One or More "Major Life Activities"**[12]
>
> 1.   **Physical or Mental Impairment**

Although the ADA does not define the term "impairment," the Equal Employment Opportunity Commission ("EEOC") has issued administrative regulations implementing the ADA, which define a "physical or mental impairment" as follows:

---

[12]      Regarding the first way in which a person can demonstrate that he has a disability, "[c]ourts apply a three-part test to determine whether a plaintiff has an actual disability under the ADA."  *Cody*, 577 F. Supp.2d at 637 (citations omitted).  "First, plaintiff must demonstrate that []he suffers from a physical or mental impairment." *Id.* at 638 (citations omitted).  "Second, plaintiff must identify the activity claimed to be impaired and establish that it constitutes a major life activity."  *Id.* (citations and internal quotations omitted).  "Third, plaintiff must demonstrate that her impairment substantially limits the major life activity identified in step two."  *Id.* (citations and internal quotations omitted).

> (1) Any physiological disorder, or condition . . . affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
>
> (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

*Cody*, 577 F. Supp.2d at 638 (citing 29 C.F.R. § 1630.2[h]).

"Under the law of this Circuit, the EEOC's regulations are entitled to 'great deference' in interpreting the ADA." *Id*. (citing *Muller v. Costello*, 187 F.3d 298, 312 [2d Cir. 1999]) (other citations omitted).

### 2.      Major Life Activities

The fact that a person may suffer from an impairment does not make that person disabled for purposes of the ADA. *Id*. (citations omitted). In order for a person to be considered "disabled" for purposes of the ADA, that person must "demonstrate that the impairment limits a major life activity." *Id*. (citations omitted).

"Major life activities are generally those activities that are of central importance to daily life." *Id*. (citations and internal quotations omitted). "Such activities include functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id*. at 639 (citations and internal quotations omitted). "The Second Circuit has also identified other 'major life activities,' including, but not limited to, 'sitting, standing, lifting or reaching.'" *Id*. (citing *Ryan*, 135 F.3d at 870).

### 3.    Substantial Limitation

"To constitute a disability, an impairment must not merely affect a major life activity, it must substantially limit that activity."  *Id*. (citations omitted).  "Thus a plaintiff who showed that []he had an impairment and that the impairment affected a major life activity would nonetheless be ineligible to prevail under the ADA if the limitation of the major life activity was not substantial."  *Id*. (citations and internal quotations omitted).

"The EEOC regulations provide that an impairment, whether physical or mental, "substantially limits" a major life activity where an individual is:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or

> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Id*. (citing 29 C.F.R. § 1630.2(j)[1]).

"In other words, the ADA protects only a limited class of persons-individuals who suffer from impairments significantly more severe than those encountered by ordinary people in everyday life."  *Id*. (citations omitted).  "The word 'substantial' . . .  precludes impairments that interfere in only a minor way with the performance of a major life activity from qualifying as disabilities."  *Id*. (citation omitted).  Accordingly, "to be substantially limited in performing a major life activity, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id*. (citation omitted).  "Moreover, the impairment's impact must also be permanent or long-term."  *Id*. (citation omitted).

13

"To prove that []he suffers from a disability that substantially limits a major life activity, a plaintiff is required to do more than merely submit evidence of a medical diagnosis of an impairment." *Id*. at 639-40 (citations omitted). "Rather, the ADA requires those claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by the impairment in terms of their own experience is substantial." *Id*. at 640 (citations omitted). "As a result, a plaintiff cannot prevail on an ADA disability discrimination claim where []he merely submits evidence that []he suffers from an impairment." *Id*. (citation omitted).

## ii.      Record of Having an Impairment

"Plaintiff may qualify as disabled for purposes of the ADA without a showing of a substantial limitation of a major life activity where []he can provide 'a record' of an impairment that substantially limits one or more major life activities." *Id*. (citing 42 U.S.C. § 12102(2)[B]). According to the EEOC regulations:

> This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities.

29 C.F.R. § 1630.2(k).

"Records that could potentially contain this information include education, medical or employment records." *Covello v. Depository Trust Co.*, 212 F. Supp.2d 109, 121 (E.D.N.Y.2002) (citing 29 C.F.R. § 1630). "The record must be one that shows an impairment that satisfies the ADA; a record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough." *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 645 (2d Cir.1998) (citing 29 C.F.R. § 1630.2[k]).

14

### iii.      Regarded as Having an Impairment

"The third way to prove a 'disability' within the meaning of the ADA is to prove that the plaintiff is 'regarded as' having an impairment that substantially limits one or more major life activities." *Colwell*, 158 F.3d at 646 (quoting 42 U.S.C. § 12102(2)[C]).  Whether an individual is 'regarded as' having a disability "depends not on the existence of an actual disability but on 'the employer's perception of the employee' and is a question of 'intent.'" *Ragusa*, 582 F. Supp.2d at 344 (citing *Capobianco v. City of N.Y.*, 422 F.3d 47, 57 [2d Cir. 2005]).  "It is not enough that the employer perceive the employee as somehow disabled; the employer must regard the employee as disabled within the meaning of the ADA, i.e., having an impairment that substantially limits a major life activity." *Ragusa*, 582 F. Supp.2d at 344 (citing *Capobianco*, 422 F.3d at 57) (other citations omitted).  In addition, a general assertion, such as "there is significant evidence to show a fact finder that Defendants perceived Plaintiff as a disabled person and knew of Plaintiff's problems," without evidence to support the assertion, is not enough to defeat summary judgment.  *Id*.  In sum, "even assuming Defendants [are] aware of Plaintiff's ailments," Plaintiff must present evidence "to suggest that [Defendants] viewed h[im] as disabled within the meaning of the ADA, that is, as possessing a medical condition that substantially limited h[is] ability to work."  *Id*.

### b.      Able to Perform the Essential Functions of the Job with or Without Reasonable Accommodation

Upon a plaintiff demonstrating that he was disabled at the time of the adverse action that he suffered, and that the employer was covered by the ADA and on notice of Plaintiff's disability, a court must inquire whether the plaintiff has "made a sufficient showing that, with reasonable accommodation, []he could perform the essential functions of the relevant job and

that [the employer] failed to make the appropriate accommodations." *McBride v. BIC Consumer Prod. Mfg. Co., Inc*., 583 F.3d 92, 97 (2d Cir. 2009).  "In the context of the ADA, reasonable accommodation may include, *inter alia*, modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, 'reassignment to a vacant position.'" *McBride*, 583 F.3d at 97 (quoting 42 U.S.C. § 12111[9][B]) (other citation omitted).  "The plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow h[im] to perform the essential functions of h[is] employment, including the existence of a vacant position for which []he is qualified." *Id*. (citations omitted).

### c.      Suffers an Adverse Employment Action Because of the Disability

A plaintiff suffers an adverse employment action:

> if he . . . endures a materially adverse change in the terms and conditions of employment. To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities [and it may] be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.

*Galabya v. New York City Bd. of Educ*., 202 F.3d 636, 640 (2d Cir. 2000) (citations and internal quotation marks omitted).  However, "less flagrant reprisals by employers may indeed be adverse." *Wanamaker v. Columbian Rope Co*., 108 F.3d 462, 466 (2d Cir. 1997).  "Courts have held that termination, demotion, denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional

16

opportunities, and shift assignments that make a normal life difficult for the employee, among other things, constitute adverse employment actions."  *Little v. NBC*, 210 F. Supp.2d 330, 384 (S.D.N.Y. 2002).

### 2.      Retaliation Claim Under the ADA

The ADA makes it unlawful for an employer "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter."  42 U.S.C. § 12203(b).  The ADA further renders it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).

> To defeat a motion for summary judgment addressed to a claim of retaliation under the ADA, a plaintiff must first present sufficient evidence to make out a prima facie case–that is, evidence sufficient to permit a rational trier of fact to find [as follows]: (1) that he engaged in protected participation or opposition under the ADA; (2) that the employer was aware of this activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.

*Valtchev v. City of New York*, 06-CV-7157, 2009 WL 2850689, at *6 (S.D.N.Y. Aug. 31, 2009) (citing *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 [2d Cir. 2001]).  "If the plaintiff meets this burden and the defendant then points to evidence of a legitimate, nonretaliatory reason for the challenged employment decision, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation."  *Valtchev*, 2009 WL 2850689, at *6 (citing *Cifra v. G.E. Co.*, 252 F.3d 205, 216 [2d. Cir. 2001]).

### 3.      Adverse-Employment-Action Claim Under the ADA

Plaintiff has pled this claim in his Complaint as a separate cause of action.  However, the

Court notes that adverse employment action is not a separate cause of action under the ADA, but

rather a factor that a court must consider in determining whether a plaintiff was unlawfully

discriminated against in violation of the ADA.  *See supra* Part II.C.1.c.

### 4.      Improper Drug-Test Claim Under the ADA

"Notwithstanding its provision that an individual who has successfully completed a

supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs may

be considered a qualified individual with a disability, 42 U.S.C. § 12114(a), the ADA provides

that the reasonable testing of such an individual for the illegal use of drugs is not discrimination

within the meaning of the Act."  *Buckley v. Consolid. Edison Co. of New York, Inc.*, 155 F.3d

150, 155 (2d Cir. 1998).  Moreover, the ADA does not prohibit "the more frequent testing of

employees who have been identified as former substance abusers is not prohibited."  *Buckley*,

150 F.3d at 155 (concluding that "an employer does not discriminate in violation of the ADA by

administering tests for the illegal use of drugs to former substance abusers more frequently than

it administers such tests to those not identified as former substance abusers").

### 5.      Disclosure-of-Confidential-Information Claim Under the ADA

Section 12112(d)(4)(A) of the ADA states that an employer "shall not require a medical

examination and shall not make inquiries of an employee as to . . . the nature and severity of [a]

disability, unless such examination or inquiry is shown to be job-related and consistent with

business necessity."  42 U.S.C. § 12112(d)(4)(A).  "All medical information gained as a result of

an examination or inquiry must be kept confidential in a separate file by the employer, and can

18

be disclosed only to a limited group of individuals, such as the employee's supervisors or

managers, safety personnel, or the government when it is investigating an employer's compliance

with the ADA." *Medlin v. Rome Strip Steel Co., Inc.*, 294 F. Supp.2d 279, 293 (N.D.N.Y. 2003)

(Hurd, J.) (citing 42 U.S.C. § 12112[d][3][B]).

## III.   ANALYSIS

### A.   Hostile Work Environment Claim Under the ADA

As stated above in Part I.C. of this Decision and Order, Defendant seeks the dismissal of

this claim because (1) Plaintiff was not disabled within the meaning of the ADA given that he

continued to use drugs throughout his employment with Defendant, and (2) the harassment

alleged by Plaintiff was not trait-based or sufficiently severe to alter any term, condition, or

privilege of his employment.  Based on the current record, the Court agrees.

"A drug addiction may qualify as a disabling disease when it substantially limits one or

more major life activities."  *Divilio v. New York Dept. of Sanitation*, 00-CV-6724, 2006 WL

1662668, at *3 (E.D.N.Y. June 8, 2006) (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n.4

[2003]).  "The ADA's protection, however, is limited to employees with drug addictions that are

no longer using illegal drugs."  *Divilio*, 2006 WL 1662668, at *3 (citing *Buckley,* 155 F.3d at

154).[13]

"The relevant time period for determining whether an employee is a 'current' drug user,

thereby precluding that employee from being deemed disabled by virtue of h[is] drug use, is the

---

[13]      *See also Robertson v. Amtrak/Nat'l R.R. Passenger Corp.*, 400 F. Supp.2d 612,
622 (S.D.N.Y. 2005) (noting that the ADA's "exclusion for current drug users does not extend to
an individual who has successfully completed, or is in the process of completing, a supervised
drug rehabilitation program and who is no longer engaging in the illegal use of drugs, or has
otherwise been rehabilitated successfully and is no longer engaging in such use") (internal
quotation marks and citation omitted).

time of h[is] actual discharge." *Gilmore v. Univ. of Rochester Strong Mem'l Hosp. Div.*, 384 F. Supp.2d 602, 611 (W.D.N.Y. 2005) (citing *D'Amico v. City of New York*, 132 F.3d 145, 150 (2d Cir.), *cert. denied*, 524 U.S. 911 (1998).  "That does not mean that the employee must have literally used drugs on the date of h[is] termination, but that h[is] drug use must have been 'severe and recent enough to classify [him] as a current substance abuser . . . ." *Gilmore*, 384 F. Supp.2d at 611 (citing *D'Amico*, 132 F.3d at 150).[14]

As an initial matter, the Court finds that Plaintiff is not disabled within the meaning of the ADA.  This is because there is no admissible evidence in the record to even suggest that (1) Plaintiff's drug use substantially limited a major life activity, (2) a record exists that Plaintiff suffered from an impairment that substantially limited one or more of his major life activities, or (3) Plaintiff was regarded by his employer, or any of his supervisors, as having an impairment that substantially limits a major life activity.  Accordingly, Plaintiff's claims under the ADA must fail as a matter of law.

Moreover, even assuming that Plaintiff's drug use substantially limited a major life activity beginning on May 11, 2004, when Plaintiff was suspended from work without pay for six months and forced to undergo treatment as a condition of his return to work, the Court finds that the harassing conduct alleged by Plaintiff was not sufficiently severe to alter any term,

---

[14]     *See also Evans v. Consumer Info. and Dispute Resolution*, 05-CV-8252, 2006 WL 1209904, at *13 (S.D.N.Y. May 5, 2006) ("Because [plaintiff] was fired because of absence from work on September 11-12, 2004 related to his cocaine use, he is not protected by the ADA, and [defendant] is entitled to summary judgment on this ground alone."); *Jurman v. Coca-Cola Bottling Co.*, 02-CV-8960, 2003 WL 21767506, at *1 (S.D.N.Y. July 31, 2003) (concluding that employee who was active cocaine user at time of his termination did not have ADA-qualifying disability); *Hoffman v. MCI Worldcom Comm'ns, Inc.*, 178 F. Supp.2d 152, 156 (D. Conn. 2001) (concluding that defendant "is entitled to summary judgment because the plaintiff was 'currently engaging in illegal drug use' when [defendant] took action.").

condition, or privilege of his employment.[15]

In his Complaint, Plaintiff alleges the following incidents of harassment over roughly a five-month period (between approximately November 15, 2004, and April 21, 2005): (1) on November 16, 2004, a co-worker attempted to sell Plaintiff Lortab; (2) certain co-workers called Plaintiff names like "drug addict" and "offered [him] pills" on a daily basis; (3) on one occasion, he found "pills taped to [his] time card with a mocking note"; and (4) on a separate occasion, what "appeared to be a marijuana cigarette and an empty plastic bag was left on [his] desk."

A plaintiff can prevail on a hostile work environment claim only "[w]hen the workplaces is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993) (quotations omitted). The workplace must be evaluated "on the totality of the circumstances," and the court can consider factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it is unreasonably interferes with an employee's work performance." *Quinn v. Green Tree Credit Corp*., 159 F.3d 759, 767-68 (2d Cir. 1998) (quoting *Harris*, 510 U.S. at 23). Hostile work environment claims, however, "are meant to protect individuals from abuse and trauma that is severe" and "are not intended to promote or enforce civility, gentility, or even decency." *Curtis v. DiMaio*, 46 F. Supp.2d 206, 213-14 (E.D.N.Y. 1999), *aff'd*, 205 F.3d 1322, 2000 WL 232060 (2d Cir. 2000).

---

[15] The Court notes that it reluctantly addresses the substance of the harassing conduct because, in order to even find that Plaintiff's drug use substantially limited a major life activity beginning on May 11, 2004, the Court would have to overlook the fact that Plaintiff acknowledged that he continued to use drugs after his termination in April 2005. *See Divilio*, 2006 WL 1662668, at *3 (noting that in order for the drug addiction to qualify as a disabling disease, the addict must no longer be using illegal drugs).

In this case, in light of the totality of the circumstances, Plaintiff cannot show a hostile work environment.  There is no question that the name calling by certain individuals was childish and cruel, and that asking Plaintiff if he wanted pills, and leaving a pill and a marijuana cigarette in a place where Plaintiff would see these items is extremely mean-spirited.  However, the remarks and actions that Plaintiff complains about fall short of altering the conditions of his employment or creating an abusive working environment.  This is especially true given that Plaintiff testified that the comments by his co-workers did not affect his ability to perform his job.  (Dkt. No. 62 at 84 [Skinner Dep. Tr.].)  In addition, the remarks, even if they occurred every day, as Plaintiff claims, only took place for a short period of time.  Finally, Plaintiff has failed to adduce admissible record evidence establishing that there is a factual basis for imputing liability to Defendant.  Rather, the record reflects that Defendant had a "Policy and Complaint Procedure Regarding Discrimination and Harassment," which Plaintiff never once utilized.

For these reasons, Plaintiff's hostile work environment claim under the ADA is dismissed.

### B.      Retaliation Claim Under the ADA

Liberally construed, Plaintiff's Complaint alleges that Defendant retaliated against him by (1) denying his right to work alone, and (2) eventually terminating him in April 2005.  Based on the current record, as well as applicable law, the Court rejects Plaintiff's claim for two reasons.

First, the only activity that Plaintiff alleges that he was engaged in that could even be remotely construed as protected participation was Plaintiff's filing his complaint with the DOT.[16]

---

[16]      The Court notes that Plaintiff filed his EEOC complaint after the date of his termination, and Plaintiff does not have a right under the ADA to refuse to consent to a drug test given that Plaintiff does not have any sort of condition that would impact his ability to take such a test.

However, the Court finds that filing a complaint with the DOT is not protected participation under the ADA.

Second, even assuming that Plaintiff's filing his complaint with the DOT amounted to activity that could be conceived as protected participation under the ADA, Plaintiff's retaliation claim must be dismissed.  As an initial matter, the DOT did not investigate Defendant until after Plaintiff was terminated.  Moreover, there is no admissible evidence in the record to suggest that Defendant, or any of its employees, was aware of Plaintiff's complaint to the DOT prior to Plaintiff's termination.  Therefore, Plaintiff has failed to establish that Defendant, or any of Defendant's high ranking employees, were aware that Plaintiff filed his complaint with the DOT.

Further, even assuming that Defendant, or one of its employees, was aware that Plaintiff had filed this complaint prior to his termination, the record clearly establishes that Plaintiff was no longer allowed to be alone during work hours because of his prior drug abuse, not because he filed a complaint with the DOT.  In addition, the record clearly establishes that Plaintiff was terminated because he refused to take a drug test, not because he filed a complaint with the DOT. Based on these facts, Plaintiff has failed to establish a casual connection between his filing of a complaint with the DOT and the alleged adverse action.

As a result, Plaintiff's retaliation claim under the ADA is dismissed.

**C.      Adverse-Employment-Action Claim Under the ADA[17]**

Liberally construed, Plaintiff alleges that he was discriminated against, in violation of the ADA, in that he was terminated from his employment because of his disability.  Based on the current record, as well as applicable law, the Court rejects Plaintiff's claim for two reasons.

---

[17]      Despite how Plaintiff has pled this claim in his Complaint, the Court notes that adverse employment action is not a separate cause of action under the ADA, but rather a factor that a court must consider in determining whether a plaintiff was unlawfully discriminated against in violation of the ADA.

First, the Court recognizes that Plaintiff suffered adverse employment action in that he was terminated by Defendant.  Moreover, the Court will assume, for the sake of argument, that the job changes that Defendant implemented after Plaintiff returned to work following his six-month suspension also constitute adverse action.  Regardless, Plaintiff is unable to make out a prima facie case of discrimination under the ADA because, as stated in Part III.A. of this Decision and Order, Plaintiff is not disabled within the meaning of the ADA.

Second, even assuming that Plaintiff was disabled within the meaning of the ADA at the time that he suffered adverse action, the disability that Plaintiff suffered from was drug addiction.  Based on this disability, Defendant's decision to not permit Plaintiff to work alone does not constitute discrimination, but rather permissible business practice in light of Plaintiff's history of indiscretions.  In addition, Defendant's decision to terminate Plaintiff was not caused by his drug addiction, but rather his refusal to submit to a drug test.

For all of these reasons, Plaintiff's claim of discrimination under the ADA is denied.

### D.  Improper Drug-Test Claim Under the ADA

Plaintiff alleges that Defendant violated his rights under the ADA by (1) subjecting him to drug tests, and (2) subjecting him to these tests more frequently than other employees.  Based on the current record, as well as applicable law, the Court rejects Plaintiff's claim for two reasons.

First, as stated in Part III.A. of this Decision and Order, Plaintiff is not disabled within the meaning of the ADA, and is therefore unable to avail himself of the protections set forth under the ADA.

Second, even assuming that Plaintiff was disabled within the meaning of the ADA between November 2004 and April 2005 (the period during which Plaintiff was subjected to drug testing), based on the fact that he underwent drug treatment after May 11, 2004, and was

not engaged in drug use when Defendant first began drug testing him in November 2004, "the

A[DA] provides that drug testing, designed to ensure that a former substance abuser is no longer

engaging in the illegal use of drugs, shall not be a violation of the Act." *Buckley*, 155 F.3d at

155 (concluding "that an employer does not discriminate in violation of the ADA by

administering tests for the illegal use of drugs to former substance abusers more frequently than

it administers such tests to those not identified as former substance abusers") (quoting 42 U.S.C.

§ 12114[b]).   As a result, Plaintiff's claim that Defendant violated the ADA by subjecting him to

drug testing despite not subjecting other employees to the same testing is without merit.[18]

For these reasons, the Court dismisses Plaintiff's ADA claim regarding Defendant's

decision to drug test him.

### E.     Improper-Disclosure-of-Confidential-Information Claim Under the ADA

Plaintiff claims that Defendant's Corporation Counsel, Robert Going, improperly

disclosed the fact that Plaintiff tested positive for drugs on Mr. Going's radio program,

subsequent to Plaintiff's termination, in violation of the ADA.   Based on the current record, as

well as the applicable law, the Court dismisses Plaintiff's claim for two reasons.

First, as previously indicated, Plaintiff does not (and did not at the time that he was

subjected to drug testing) suffer from a disability within the meaning of the ADA.   As a result,

even assuming that Robert Going improperly revealed the fact that Plaintiff previously tested

positive for drugs, the ADA's non-disclosure duty was not triggered.

Second, even assuming that Plaintiff's drug addiction rendered him a disabled person

within the meaning of the ADA, revealing the results of Plaintiff's drug test to the public did not

---

[18]     The Court notes also that Plaintiff agreed to submit to at least six random alcohol
and illegal drug tests within the first twelve months following his return to work in November
2004, as one of the conditions of his return to work.

violate the provisions of the ADA.  Section 12112(d)(4)(A) of the ADA provides that an

employer "shall not require a medical examination and shall not make inquiries of an employee

as to . . . the nature and severity of [a] disability, unless such examination or inquiry is shown to

be job-related and consistent with business necessity."  42 U.S.C. § 12112(d)(4)(A).  "All

medical information gained as a result of an examination or inquiry must be kept confidential in

a separate file by the employer, and can be disclosed only to a limited group of individuals, such

as the employee's supervisors or managers, safety personnel, or the government when it is

investigating an employer's compliance with the ADA."  *Medlin v. Rome Strip Steel Co., Inc*.,

294 F. Supp.2d 279, 293 (N.D.N.Y. 2003) (Hurd, J.) (citing 42 U.S.C. § 12112[d][3][B]).

However, Section 12114 of the ADA, which governs the illegal use of drugs and alcohol,

expressly provides that "a test to determine the illegal use of drugs shall not be considered a

medical examination."  42 U.S.C. § 12114(d)(1).  Moreover, Section 12114 does not indicate

that the results of a drug test must be kept confidential.

Because Congress expressly indicated in Section 12112 that the results of a medical

examination or inquiry must be kept confidential, the Court concludes that, if Congress intended

for the ADA to protect the confidentiality of the results of a drug test, it would have either (1)

expressly stated so in Section 12114, or (2) at a minimum, expressly stated that a drug test

constitutes a medical examination or inquiry.  As a result, even assuming that Robert Going

stated on public radio that Plaintiff failed a drug test, Plaintiff does not have a cause of action

against him under the ADA.

For these reasons, Plaintiff's claim of improper disclosure of confidential information

pursuant to the ADA is dismissed.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 35) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: March 30, 2010
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

27